**Richard William KEARNS**

v.

**The SEVEN–UP COMPANY.**

**Civ. A. No. 28311.**

United States District Court
E. D. Pennsylvania.

Oct. 17, 1961.

See also D.C., 30 F.R.D. 333.

Alan J. White, Milton M. Borowsky, Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiff.

Thomas E. Byrne, Jr., Albert R. Beal, Krusen, Evans & Byrne, Thomas Raeburn White, Jr., White & Williams, Philadelphia, Pa., for defendant.

J. CULLEN GANEY, Circuit Judge[*].

The complaint in this action avers that on April 7, 1960, while the plaintiff was removing a bottle of "Seven-Up" brand soft drink from a case for the purpose of placing it in a vending machine at State College, Pennsylvania, the bottle shattered and injured him, and that the case was purchased from Confair Bottling Company, Inc., of Williamsport, Pennsylvania. The latter apparently purchased the bottled soft drinks from The Seven-Up Bottling Co., also located in Williamsport.[1] The action was brought on July 20, 1960, against The Seven-Up Company, owner of the trademarks "Seven-Up" and "7-Up", on the following theories: (1) The company which bottled the beverage was an agent

---

[*] Specially designated to sit in the District Court.

[1] Both State College and Williamsport are located in the Western District of Pennsylvania.

of the defendant; (2) Defendant was actively negligent in not exercising the various methods of control which it reserved over local bottlers of the Seven-Up brand beverage; and (3) Defendant had breached the warranty of merchantability of its product.

Attempted service upon the defendant was made by mailing a copy of the complaint and the order of this court authorizing substituted service to the Secretary of the Commonwealth of Pennsylvania on July 27, 1960, and to defendant's main place of business in St. Louis, Missouri, on August 11, 1960, pursuant to § 1011 (B) of the Pennsylvania Business Corporation Law, as amended, 15 P.S. § 2852–1011(B), as permitted by F.R.Civ. P. 4(c) and 4(d) (7).

The matter is now before us on defendant's motion to dismiss for lack of jurisdiction over its person and to vacate and set aside service of process. The basis for the motion is that defendant was not present here at the time of service because it was not doing business here and the local bottling companies were not its agents; and it has not registered to do business in this State, nor has it appointed an agent within this State upon whom service on its behalf could be made.

The defendant is a corporation duly organized and existing under the laws of the State of Missouri, with its principal office and place of business in St. Louis, Missouri. It has not procured a certificate of authority to do business in Pennsylvania, nor has it actually appointed an agent to accept service of process on its behalf in Pennsylvania.

Defendant is in the business of selling and promoting the sale of Seven-Up brand beverage by licensing bottlers and distributors throughout the country to bottle and sell the beverage under certain terms and conditions. In this connection it manufactures and sells an extract, the main selling component of the beverage, to local bottling companies pursuant to a written agreement; all shipments of the extract are f. o. b. St. Louis. The companies in turn mix the extract with other ingredients, according to a prescribed formula, to make up the beverage. The beverage is then poured into uniform type, size and styled bottles, approved by defendant, and sold to the local retail trade.

It has territorial sales agreements with 34 bottling companies that sell the beverage to people in Pennsylvania. Out of the 34 companies, 29 are located in Pennsylvania. These companies have purchased approximately $102,546 worth of the extract from defendant annually.

Before defendant will sell its extract to a bottling company, that company must first execute a standard form agreement, entitled "Territory Agreement." This agreement, in return for the privilege of selling "Seven-Up" beverage in a certain territory, that is the city involved and its environs, requires that the local bottling company intensively sell Seven-Up beverage; that the sale and delivery of Seven-Up be carried on in a business like manner, using those methods of promotion and sale recommended by the defendant; that the local company may not bottle, sell, distribute or promote at any time any combination of lemon and lime drink other than Seven-Up brand, or lemon drink and lime drink or a combination drink of predominate lemon and lime flavor, or any drink bearing a name or trademark that is a colorable imitation of the trademark "Seven-Up"; that the advertising and promotional material offered by defendant to the local company must be purchased and used according to discussed plans; that any advertising or promotional material other than that obtained from defendant must be approved by it before the material can be used by the local company; that defendant must approve all cases, bottles and crowns used for Seven-Up brand beverage as to type, style, size and design; that before the local company may use a non-standard bottle, written permission must first be

granted by defendant; that the delivery trucks of the local bottler must be decorated in standard Seven-Up colors and according to approved designs; that proper identification for the Seven-Up name must be maintained at all times by the local company; that the employees of the local company must wear uniforms carrying approved Seven-Up emblems; that no concessions, such as rebates, free goods or premiums at any time may be given; that cash deposits on cases and bottles must be collected on each sale; that Seven-Up beverage must be manufactured only according to a formula provided by defendant and in accordance with sanitary conditions recommended by defendant; that at regular or recommended intervals samples of finished Seven-Up beverage must be sent to the laboratory of defendant for comparison analysis; that written permission must first be obtained from defendant before any lending, selling or delivering to any other company, Seven-Up type bottles, extracts, crowns or finished merchandise can be made; that written permission must first be obtained from defendant before any contracts can be made with sub-bottlers, agents or distributors or anyone having anything to do with the bottling or wholesaling of Seven-Up brand beverage.

To make sure that the agreement was being carried out, defendant systematically sent experts, directly employed by it, to visit each of the local companies. These experts traveled continuously from one company to the other. Two of the experts, from defendant's Technical Department, saw to it that the beverage was of uniform quality, and packaged sanitarily; they also advised the companies on production matters. Three experts from the Sales Counselors Department counseled the companies on marketing methods. Two experts from the National Accounts Department made trips for the purpose of exploring means whereby groups of bottlers could make

sales locally to concerns that had central purchasing departments, and an expert from the Sampling and Store Demonstration Department assisted them in setting up sampling and store demonstration programs. From time to time employees of defendant visited the United Sound and Signal Company, located in Columbus, Pennsylvania, to familiarize themselves with the equipment built there especially for the use of companies that bottle Seven-Up beverage.

Except for its president, all officers and department heads of defendant attended a three-day regional good will convention held on October 26 to 29, 1959, in Philadelphia, Pennsylvania, for the companies selling the Seven-Up brand beverage located in the eastern part of the United States. With few exceptions, defendant's expert employees who visited the 34 local companies also attended the convention.

Defendant does not own any real estate in Pennsylvania. None of its officers or directors are, or were, officers or directors of any of the bottling companies with whom it has territory agreements in Pennsylvania or with companies in other states that sell their products in Pennsylvania.

Although it does not own the establishments, the outward appearance of the buildings of the 34 local companies and the uniforms of their employees are such that the public is given the impression that defendant owns the buildings, directly hires the employees and actually does business at those places. All the local companies bear the name "Seven-Up Bottling Company" (or Co.) as part of their company name.

Defendant has been placing advertisements in the magazines "Farm Journal" and "Saturday Evening Post" and in a number of newspapers published in Pennsylvania. In 1959, at a cost of $66,014.35, it posted a number of signs advertising Seven-Up beverages in vari-

ous places throughout this State, and in order to keep the local advertising uniform with the national, defendant required the local companies to buy the advertising material directly from it or from concerns designated by it. It sold such material to each of the 34 companies in dollar amounts ranging from less than $500 up to $23,000. All this was in addition to its advertising on a national scale through the media of the press, magazine, television and radio, which costs it over a half million dollars annually.

Under these circumstances, the defendant, in our opinion, was doing business in Pennsylvania within the meaning of § 1011(B) of the Business Corporation Law at the time attempted service was made upon it. See Florio v. Powder-Power Tool Corp., 248 F.2d 367 (C.A.3, 1957).

The case of Swavely v. Vandegrift, et al., 397 Pa. 281, 154 A.2d 779 (1959), upon which defendant heavily relies, can be distinguished from the action before us. The Seven-Up agreement is more restrictive and reserves more control over the local bottlers than the contract between the Calcinator Corporation and its local distributors. The employees of the local bottlers wore uniforms carrying approved Seven-Up emblems, and the bottlers' delivery trucks were decorated in standard Seven-Up colors and according to approved designs, as required by the agreement, which gave the appearance that defendant was directly doing business here. In addition, defendant continually sent its salaried employees, not independent contractors, into Pennsylvania to promote the sale of Seven-Up beverage in this State.

Consequently, in our opinion, this court has jurisdiction over the person of defendant for the purpose of this action.

Accordingly, defendant's motion to dismiss and to vacate and set aside service of process will be denied.