James SCALISE, Administrator of the Estate of James Eugene Scalise, Deceased, and Marjorie Scalise

v.

BEECH AIRCRAFT CORPORATION and Atlantic Aviation Corporation.

Civ. A. No. 40985.

United States District Court
E. D. Pennsylvania.

Oct. 25, 1967.

15. Id. at 104, 82 S.Ct. at 577.

Tom P. Monteverde, Philadelphia, Pa., for plaintiff.

David L. Steck, Rawle & Henderson, Philadelphia, Pa., for Beech Aircraft Corp.

Henry T. Reath, David C. Toomey, Duane, Morris & Heckscher, Philadelphia, Pa., for defendant Atlantic Aviation Corp.

## OPINION

TROUTMAN, District Judge.

This matter is before the Court on defendants' motions to quash return of service of the summons and complaint or to dismiss the action.

The merits of the case are not before us, but to consider the jurisdictional problem in context, they involve a Wrongful Death and Survival Act action brought by plaintiffs, administrator and wife of decedent, to recover damages for the death of their decedent, James Scalise. Mr. Scalise died in the crash of a private plane near Salem, New Jersey, on August 21, 1965. The defendants are Beech Aircraft Corporation (hereinafter referred to as Beech), manufacturer of the plane, and Atlantic Aviation Corporation (hereinafter referred to as Atlantic), owner of the plane in which Mr. Scalise was receiving flight instructions from an Atlantic employee at the time of the crash.

Service of process was purportedly made at the Philadelphia International Airport offices of Atlantic Aviation Service, Inc., (hereinafter referred to as Service), and Atlantic Philadelphia, Inc., by delivery of the summons and complaint to Mrs. Leonore Jacobs, secretary to the Operations Manager, Reuben Springer. The record clearly establishes that Service and Atlantic Philadelphia are wholly-owned subsidiaries of Atlantic. At the time of the accident in suit, Service was the regional distributor, and at the time of service of process, a dealer of Beech; and at the time of service of process, Atlantic Philadelphia was the regional distributor of Beech.

In substance, plaintiffs contend that the facts as set forth in the affidavits and exhibits produced by the opposing parties support the proposition that the defendant corporations exerted such control over the corporations served that they were "doing business" within Pennsylvania so as to render them amenable to the process of this Court.[1] For the sake of clarity, plaintiff's contentions will be first considered as to Atlantic, and then as to Beech.

### I.

In support of plaintiffs' contentions that Atlantic was "doing business" in Pennsylvania, through its subsidiary, affidavits and answers to interrogatories have been filed which establish the following:

1. Atlantic is incorporated in the State of Delaware, has its principal place of business in Delaware, and is primarily engaged in the design and installation of aircraft and the maintenance of large aircraft. It also sells Gulfstream and Beech aircraft, maintains some small charter operations, including the chartering of planes for flight instructions.

2. Among Atlantic's wholly-owned subsidiaries are included: Service, a Delaware corporation, having its principal place of business in Pennsylvania, engaging primarily in the sales and service of small aircraft, primarily Beechcraft, and conducting a flight and

1. F.R.Civ.P. 4 (d) (7) permits service of process which confirms with the state rules. In that no attempt was made to serve the Secretary of the Commonwealth of Pennsylvania, disposition of this motion requires consideration of Rule 2180 (a) (2), Pa.R.C.P., 12 P.S. Appendix, which provides, inter alia, "Service of Process: (a) Service of process within the county in which the action is insti- tuted shall be made upon a corporation or similar entity by the sheriff of that county by handing a copy thereof * * * (1) to an executive officer, partner or trustee of the corporation or similar entity; or (2) to an agent or person for the time being in charge of, and only at, *any office or usual place of business* of the corporation or similar entity. * * *" (Emphasis supplied)

charter operation, not including the chartering of planes for flight instructions; Delaware Aviation Corporation, Inc., a Delaware corporation, having its principal place of business in Pennsylvania, and engaging primarily in the sales and service of aircraft; Atlantic Aviation Supply, Inc., a Delaware corporation, having its principal place of business in New Jersey, and engaging primarily in the sale of aircraft parts; National Financing, Inc., a Delaware corporation, engaging in the business of financing aircraft sales.

3. The principal officers of Atlantic and Service are identical. Although the salaries of these common officers are paid by Atlantic, this expense is allocated to the respective corporations on a formula basis.

4. For the most part, the board of directors of Atlantic and Service have been identical.

5. The persons in charge of Service's activities are Milton Maloney, Sales Manager, and Reuben Springer, Operations Manager, both of whom are employees solely of Service. Although both report directly to Donald Redpath, a Vice President of Atlantic and Service, apart from the general budget control of Mr. Redpath, both have virtually complete autonomy in the sales and operations areas.

6. The advertising of the subsidiaries is prepared under the direction of the sales managers of the respective subsidiaries with some requested layout assistance from Atlantic's advertising department. However, approval of Atlantic Aviation Corporation is not essential before the advertisements can be placed.

7. Atlantic does not guarantee any of the obligations of Service or Delaware Aviation.

8. Although Service's general ledger is kept in Atlantic's computer in Wilmington, Service is charged for the use of the computer. In addition, Service's original books of entry and other accounting records are kept in its office in Philadelphia. Furthermore, there is no pattern of procedure whereby accounting personnel of Atlantic visit the offices of the subsidiaries to inspect their financial records.

9. Although all insurance maintained by Atlantic, Service, and Delaware Aviation is provided by the same companies and through the same broker, there is no indication in the record whether the same or separate policies cover the different corporations.

10. Although Atlantic's pension plan and trust for the benefit of employees has been adopted by Service, Service has its own labor contract which was negotiated by Mr. Springer.

11. Service keeps separate corporate minutes. It has separate directors' meetings. It has a separate distribution contract with Beech and it files separate state and federal tax returns.

12. Although prior to 1957, Atlantic, then known as Atlantic Aviation Service, conducted business at Philadelphia International Airport, the now-existing Atlantic Aviation Service, in addition to the business previously conducted by Atlantic, has carried on many other activities at Philadelphia International Airport which were not conducted there by Atlantic prior to 1957.

13. Although checks of Atlantic Aviation Service can be signed only by two of the four common officers, Service does maintain its own bank account in Philadelphia.

14. Neither Atlantic nor Service solicits business for the other.

15. Both Atlantic and Service deal independently with their respective customers and suppliers.

16. The subsidiaries are not maintained for the sole purpose of supplementing the activities of the parent. Inter-company transactions represent only a small portion of the total business of the subsidiaries. When inter-company transactions do occur normal commercial practices are adhered to in all cases.

17. Atlantic is not registered to do business in Pennsylvania, has no office in Pennsylvania, has no officers or di-

rectors residing in Pennsylvania, and has never conducted a directors' meeting in Pennsylvania.

18. This action against Atlantic, although arising out of dealings of the plaintiffs' decedent with Atlantic, does not arise out of actions or omissions of Atlantic within the Commonwealth of Pennsylvania.

19. Atlantic does not, either itself or through Service, maintain a regular and established place of business in Pennsylvania.

The leading case on this general subject is Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925). Cannon brought an action against Cudahy Packing Company, a Maine corporation, in a North Carolina Federal Court, for breach of contract. Service of process was made in North Carolina upon the defendant's wholly-owned subsidiary, the subsidiary's business being solely to distribute the parent's products. The United States Supreme Court, speaking through the late Mr. Justice Brandeis, noted that the books had been kept separately and that all inter-company transactions had been represented by appropriate documentation. It was also noted that plaintiff was not attempting to assert any cause of action arising out of dealings with the subsidiary. The Court refused to ignore the separate corporate existence, carefully maintained, in determining the existence of jurisdiction and set aside the service made on the subsidiary corporation, stating, inter alia, "such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction" of North Carolina and "The corporate separation, though perhaps merely formal, was real. It was not pure fiction". (267 U.S., at p. 337, 45 S.Ct. at p. 251.)

■ Neither the total ownership of the stock of the subsidiary by the parent corporation, *Cannon*, supra; Technograph Printed Circuits, Ltd. v. Epsco, Inc., 224 F.Supp. 260 (E.D.Pa.1963); Botwinick v. Credit Exchange, Inc., 419 Pa. 65, 213 A.2d 349 (1965), nor the similarity of names between the parent and the subsidiary, Moorehead v. Curtis Publishing Co., 43 F.Supp. 67 (W.D. Kentucky 1942), nor the identity of the officers and directors of the subsidiary and the parent, Electrosonics International, Inc. v. Wurlitzer Co., 234 F.Supp. 913 (E.D.Pa.1964); *Botwinick*, supra, is in and of itself sufficient to subject the non-resident parent to jurisdiction in the state in which the subsidiary does business, in the absence of a showing that the subsidiary is the parent's alter ego or agent.

■ The cases have uniformly held, therefore, that although stock ownership and identity of officers and directors naturally subject the subsidiary to a measure of control, the issue upon which the disposition of a motion to quash service of process lies is how such control is exercised. In the case at bar, each subsidiary keeps separate records, files separate tax returns, owns its own property, conducts its own business and is responsible for its own activities and its own debts. On the infrequent occasions when the subsidiaries deal with each other or with Atlantic, they do so in the same manner and with the same documentation as when they deal with persons having no connection with Atlantic. We hold, therefore, that Atlantic's rigorous adherence to the formalities customarily associated with separate corporations should not be cast aside at the instance of plaintiffs whose decedent had no dealings with any of the subsidiaries, or with Atlantic in Pennsylvania, and whose cause of action arose outside of Pennsylvania.

Accordingly, in that there has not been introduced into this record sufficient evidence of the conduct of either Atlantic or Service which would justify our sustaining service of process upon Atlantic, the attempted service of process upon Atlantic must be quashed.

II.

As in the case of Atlantic, plaintiffs contend that the defendant Beech was present or was doing business in Penn-

sylvania, through its distributor, so as to be subject to the jurisdiction of this Court in this action.

Beech is a Delaware corporation with its main office, plant and principal place of business in the State of Kansas. It has no plant, factory, office or real property in Pennsylvania.

At the time of the accident in suit and at least until January 21, 1966, Service was the regional distributor of Beech Aircraft in Pennsylvania under a 1964 distribution agreement extended by letter to cover 1965. An examination of the agreement suggests, and on August 2, 1966, in Civil Action No. 37711, entitled Anapol, Guardian v. Beech, et al., Judge Higginbotham, of this Court so held, that the relationship between Service and Beech, under their 1964 distributorship contract, was such that Beech was doing business through Service in Pennsylvania to an extent which made Beech amenable to the process of this Court. Moreover, in Szantay v. Beech Aircraft Corporation, 237 F.Supp. 393 (E.D.S.Car.1965), aff. 349 F.2d 60 (4th Cir. 1965), a case involving a distributorship agreement almost identical to the 1964 agreement between Beech and Service, it was held that, by reason of the relationship between Beech and its South Carolina distributor, Beech was doing business in South Carolina and, therefore, was subject to the jurisdiction of the United States District Court for the Eastern District of South Carolina by service upon its local distributor.

On November 8, 1965, more than two months after the accident in suit, in United States v. Beech Aircraft Corporation, Civil Action No. W–3129, the United States District Court for the District of Kansas entered an anti-trust consent decree requiring that Beech make certain modifications in its distributor's contract. Beech, in addition to making modifications in the then existing distributor's contracts, and instead of entering into the annual distributor contract with Service, contracted with a new entity on January 21, 1966, as its Pennsylvania distributor, Atlantic Philadelphia, Inc., another wholly-owned subsidiary of Atlantic, while Service operated as a dealer under the new corporation in 1966. Although Atlantic Philadelphia and Service are separate corporations, their officers are identical, their places of business are the same and no part of the officers' salaries are allocated to Atlantic Philadelphia. As counsel for plaintiffs suggests, perhaps the best evidence of the ethereal nature of Atlantic Philadelphia is the fact that, beginning in 1967, it became entirely inactive and was succeeded as the Beech distributor by still another wholly-owned subsidiary of Atlantic, Atlantic Aircraft Sales Corporation. Hence, for all practical purposes, and at least for disposition of the instant motion to quash service of process, Atlantic Philadelphia and Service will be considered as one and the same. Consequently, although the marshal's return indicates that service of process was made only on Atlantic Aviation Service, Inc., service of process upon Atlantic Aviation Service, Inc. will be deemed service of process upon Atlantic Philadelphia, Inc.

In the instant suit, service of process was made on Service and Atlantic Philadelphia on August 22, 1966. Hence, although the 1964 agreement clearly establishes, and Judge Higginbotham so held, supra, that Beech was doing business in Pennsylvania by virtue of said agreement, under the clearly established rule that when the person served is not the alter ego of the defendant at the time of the attempted service of process, the attempted service is ineffectual, the issue upon which this motion to quash service of process lies is whether or not Beech was present in this jurisdiction at the time of the purported service: i. e., were the contacts of Beech, vis-a-vis the 1966 distributor agreement, and the implementation thereof, sufficient to say that it was "doing business" in Pennsylvania at the time of the purported service? Granite Chemical Corporation v. Northeast Coal & Dock Corporation, 249 F.Supp. 597 (D.C.Me.1966); Novit-

ski v. Lykes Steamship Co., 90 F.Supp. 971 (E.D.Pa.1950); Holland v. Parry Nav. Co., 7 F.R.D. 471 (E.D.Pa.1947); Johnson v. Black Diamond Lines, 36 F. Supp. 721 (E.D.Pa.1941).

The amount of control exercised by Beech is readily apparent upon consideration of the distributorship agreement, including addenda, and other incidental papers in the record. Implementation of the contract is outlined in the deposition of Donald R. Redpath, Vice President and General Manager of Atlantic, Service and Atlantic Philadelphia.

In conformity with the dictates of the anti-trust decree, the 1966 distributor agreement between Beech and Atlantic Philadelphia, unlike the 1964 distributor agreement, contains no provision which prohibits the distributor from selling aircraft anywhere in the United States. Although Beech "suggests" retail prices for aircraft, there is no provision in the agreement making these "suggestions" mandatory, and it does not require that the distributor meet any minimum sales quotas. At this point, however, the dissimilarity ceases. As was true of the 1964 agreement, the 1966 distributor agreement is a written non-assignable contract between Beech and its distributors, terminable upon thirty (30) days' written notice by either party to the other, with or without cause, and provides, inter alia, that the *distributor* agrees: "to maintain such minimum field sales and management organization, both as to number and quality of personnel acceptable to *Beech*"; "to employ and utilize qualified service personnel, acceptable to *Beech*"; to cause its dealers "to maintain minimum inventory of parts and equipment as prescribed by *Beech*"; to use only those "spare parts and equipment manufactured by or supplied by *Beech*" unless Beech certifies otherwise in writing; "to provide facilities at its place of business as deemed necessary by *Beech*"; "not to move its place of business to a new location without obtaining the prior written consent of *Beech*"; "to participate actively and vigorously in promotional, merchandising and adver-

tising programs as outlined from time to time by *Beech*"; "to purchase, erect in locations designated by *Beech* and maintain in good repair at all times those approved and recommended product signs deemed necessary by *Beech*"; "to maintain a finance structure and operating capital satisfactory to *Beech*"; "to maintain an accounting system which will permit operating reports to *Beech*"; "to furnish to *Beech* monthly and annual operating reports"; to supply *Beech* with such other financial, accounting and marketing information as *Beech* may request from time to time"; "to allow representatives of *Beech* from time to time to inspect" the distributor's business facilities, records, supplies and personnel. It also contains the following specific provision:

## "H. MARKETING COORDINATION

"It is recognized by DISTRIBUTOR and BEECH that thorough marketing coordination and cooperation are necessary for accomplishment of the objective of improved marketing conditions in the increased sale of BEECH-CRAFT products in DISTRIBUTOR'S area of responsibility.

"1. Therefore, it is agreed that BEECH through its Officers and employees may enter DISTRIBUTOR'S area of responsibility from time to time to make marketing surveys or gather such other information as BEECH may desire; to call upon and examine the facilities and personnel of distributors, dealers and others, to ascertain whether BEECHCRAFT airplanes are being adequately serviced and repaired in said area; to call upon prospective dealers, customers, prospective customers and other interested parties; and to do any and all things which BEECH believes is necessary and proper for increased sales and improved service of BEECH-CRAFT airplanes in said area.

"2. All such activities as recited hereinabove will be planned for the best interests of DISTRIBUTOR and BEECH, and BEECH will endeavor to

notify DISTRIBUTOR in advance of such planned entries into DISTRIBUTOR'S area of responsibility."

The facts developed through depositions, affidavits and exhibits attached thereto indicate that this was no mere paper arrangement. Officers of Beech arranged for visits with Service's personnel, at Service's place of business as well as elsewhere, to "map out your sales program"; to "call on old customers and future prospects"; to "help form corporate policy decisions in regard to marketing policies and programs". Representatives of Beech were sent into Service's sales territory, including Pennsylvania: to make a survey of air carrier needs; to conduct the annual regional sales meetings; to conduct service clinics; to act as liason between Beech and Service for the purpose of obtaining parts or information related thereto from the Beech factory. In addition, although it is not brought out in the record whether the visits were actually made, the record is replete with proposed and scheduled visits to Service's place of business by Beech employees for a variety of reasons.

When Beech employees came to Philadelphia they made the facilities of Service at Philadelphia International Airport "their headquarters". Furthermore, Beech personnel apparently visited Service's facilities with such frequency that Beech found it expedient to establish a standard procedure by which Service could be reimbursed by Beech for the expenses incurred by its personnel.

■■ It is an accepted rule of law that a foreign manufacturer is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business in such a manner and to such an extent as to warrant the inference that it is present within the state. Where the foreign manufacturer exercises extensive control and supervision over its Pennsylvania distributor, it is considered to have sufficient contact with Pennsylvania as to be deemed to be doing business within that state and render it amenable to the process of this Court. Delray Beech Aviation Corp. v. Mooney Aircraft, Inc., 332 F.2d 135 (5th Cir. 1964), cert. denied, 379 U.S. 915, 85 S.Ct. 262, 13 L.Ed.2d 185 (1964); Szantay, supra; Florio v. Powder Power Tool Corp., 248 F.2d 367 (3rd Cir. 1957); Kearns v. The Seven-Up Company, 32 F.R.D. 238 (E.D.Pa.1961).

It is evident upon an examination of the record that Beech controlled Atlantic Philadelphia's sales and service policies, facilities, public relations, accounts and records, and marketing practices. In fact, its influence was exerted over every important matter concerning the sale of Beechcraft by Atlantic Philadelphia.

■■ Although the 1966 distributor agreement was modified by virtue of the anti-trust decree previously alluded to, a comparison of the circumstances prevailing at the time of service in this case with those prevailing at the time of service in Anapol and Szantay, supra, convinces this Court that the extensive control and supervision there exercised by Beech over its distributor is not sufficiently different to justify our dismissing Beech in this case, notwithstanding the fact that liability is predicated on a course of conduct having no connection with Pennsylvania, and the Pennsylvania distributor upon whom service was made had no connection with said conduct. This is a transitory cause of action and as such suit may be instituted in any jurisdiction where the defendant may be found.

Accordingly, service of process upon Beech will be sustained.