**ACS INDUSTRIES, INC., Plaintiff**

v.

**KELLER INDUSTRIES, INC., Defendant.**

**Civ. No. 12786.**

United States District Court
D. Connecticut.

Jan. 6, 1969.

On Motion to Amend Jan. 28, 1969.

John M. Calimafde, of Hopgood & Calimafde, New York City, for plaintiff.

Robert S. Evans, of Evans & Evans, New Haven, Conn., for defendant.

TIMBERS, Chief Judge.

Defendant's motion to dismiss, pursuant to Rule 12(b)(2), Fed.R.Civ.P., for lack of in personam jurisdiction in this diversity action for breach of contract, raises the question whether service in Connecticut on defendant's wholly owned subsidiary is sufficient to confer jurisdiction over defendant.

The Court holds that, construed as a motion for summary judgment pursuant to Rule 56(b), Fed.R.Civ.P., defendant's motion must be denied.

## FACTS

Plaintiff, ACS Industries, Inc., a Rhode Island corporation, sold and delivered certain goods to defendant, Keller Industries, Inc., a Florida corporation, during May and June, 1968. Payment not having been made, plaintiff commenced the instant action by service upon Vent Control of Hartford, Inc., a wholly owned subsidiary of defendant, alleging in its complaint that Vent Control is the mere agent and alter ego of defendant. Defendant denies this and seeks dismissal of the action, relying upon an alleged corporate separateness. The cause of action did not arise out of a transaction between plaintiff and the subsidiary, and no aspects of the disputed transaction occurred within the jurisdiction of the forum.

## APPLICABLE LAW

In this diversity action, it is clear that the federal court must apply the state standard for determining a defendant's amenability to service of process. Arrowsmith v. United Press International, 320 F.2d 219 (2 Cir.1963) (en banc), overruling Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 508 (2 Cir.1960); Bomze v. Nardis Sportswear, Inc., 165 F.2d 33, 35 (2 Cir.1948). No federal standard is applicable in determining jurisdiction; but where the state standard purports to permit the exercise of in personam jurisdiction, the Court must determine whether application of the state standard would contravene federal due process requirements. See Arrowsmith v. United Press International, supra, at 223.

Thus, the amenability of defendant, a Florida corporation which does not do business in Connecticut, to service of process in Connecticut depends upon the applicability of traditional notions of corporate presence within the forum state.[1] It is plaintiff's contention that defendant's presence is established through the presence of Vent Control of Hartford, Inc., a wholly owned subsidiary of defendant, which also is incorporated in Florida but admittedly does business in Connecticut. Plaintiff concedes that the subsidiary had nothing to do with the transaction, and that no acts were done in the forum in connection therewith, but insists that this is a

---

1. It is clear that this case does not fall within the jurisdictional grasp of the Connecticut long-arm statute, Conn.Gen.Stat. § 33–411, and plaintiff does not claim it does.

proper case to pierce the theoretical veil of corporate separateness.

In Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333 (1925), Mr. Justice Brandeis considered an analogous challenge to corporate separateness. There a Maine corporation (Cudahy) was sued through its Alabama subsidiary, "the instrumentality employed to market Cudahy products within the [forum]," on a cause of action not involving any activities by the parent in the subsidiary's state. The goods sold by the subsidiary were sent directly by the defendant parent to the buyer. However, the subsidiary itself collected the purchase price. The relationship between the two corporations was noted in some detail:

"Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely; and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other States. The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. This corporate separation from the general Cudahy business was doubtless adopted solely to secure to the defendant some advantage under the local laws." 267 U.S. at 335.

The Court held that regardless of the identity of interest and high degree of control which the parent exercised, the formal separation was sufficiently real to resist jurisdiction.[2]

The recognition in Cannon of the reality of formal corporate separateness remains viable to this date, although in other areas of the law substance has triumphed over form. Therefore, the only question before the Court is whether plaintiff has made a threshold demonstration that Keller and Vent Control failed to maintain that degree of formal separateness found adequate in Cannon.

In Berkman v. Ann Lewis Shops, Inc., 246 F.2d 44, 47 (2 Cir.1957), plaintiff asserted the following factors should be considered in evaluating the actuality of corporate separateness:

"(1) the defendant owned all the stock of the Ann Lewis Shops of Tampa; (2) both parent and subsidiary had the same individuals as directors and substantially the same individuals as officers; (3) the defendant operated a central buying service for all its subsidiaries; (4) the defendant guaranteed the lease of the Tampa subsidiary; (5) that subsidiary had been organized by the defendant in 1946 for the sole purpose of operating a retail store in Tampa; and (6) the defendant had initiated negotiations for the Tampa lease several months prior to its decision to organize the subsidiary."

Noting that the Cannon rule is generally followed, the court emphasized the maintenance of separate books and bank accounts, the filing of separate tax returns and financial statements, and the fact that the corporations assessed charges against each other for services rendered.[3] The court affirmed the dis-

---

2. The Court distinguished cases involving the liability of the parent for the acts of its subsidiary, as when separate corporate entities are utilized to defeat the public interest or perpetrate fraud. See, e. g.; Brown v. Margrande Compania Naviera, S.A., 281 F.Supp. 1004 (E.D.Va.1968).

3. See also Echeverry v. Kellogg Switchboard & Supply Co., 175 F.2d 900 (2 Cir. 1949); Cf. Blount v. Peerless Chemicals Inc., 316 F.2d 695 (2 Cir. 1963).

missal for lack of jurisdiction over the parent.

It is infrequent that the *Cannon* rationale has been overcome and jurisdiction sustained against a foreign parent on a foreign cause of action by service on a "local" subsidiary. See 2 Moore's Federal Practice ¶ 4.22[2], at 1226–28 (1967). In fact, it may be that only Beech Aircraft Corporation has exercised the requisite degree of control over its subsidiaries to have been subjected to jurisdiction in such situations.[4] The Beech trilogy includes Szantay v. Beech Aircraft Corp., 237 F.Supp. 393 (E.D.S.C.), aff'd, 349 F.2d 60 (4 Cir.1965); Scalise v. Beech Aircraft Corp., 276 F.Supp. 58 (E.D.Pa.1967); and Dunn v. Beech Aircraft Corp., 276 F.Supp. 91 (E.D.Pa.1967). Beech's relationship with its distributor was shown by analysis of their intercorporate contracts and memoranda, and by depositions. Its agreement provided that the distributor's staff and service must be *acceptable to Beech,* inventory would be *prescribed by Beech,* parts would be *supplied by Beech,* and facilities would be provided as *deemed necessary by Beech.* Beech provided pricing guidelines, established minimum quotas, supplied all advertising, limited territory, regulated accounting procedures and controlled warranties, servicing and other aspects of sales. The distributor was pledged to do whatever "Beech may consider essential to the development of [its] territory." *Szantay,* supra, at 399–400.

■ In *Scalise,* the court first dismissed as to one parent and then retained jurisdiction as to Beech. This appears to have been a decision not to pierce the corporate veil although the officers and directors are the same so long as they can be said to wear *two* hats and operate in theoretically distinct capacities for each entity. However, where the alleged agency or alter ego claim is based upon an agreement whereby one corporate entity is made subordinate to the other, the veil will be pierced.

■ These are the principles upon which a decision on the instant motion must be based; their application will be in light of the principle that plaintiff must establish at least a prima facie threshold jurisdiction upon which this Court can proceed. See United States v. Montreal Trust Co., 358 F.2d 239, 242 & n.4 (2 Cir.), cert. denied, 384 U.S. 919 (1966), citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936). In holding that this threshold showing has been successfully made on the present state of the record, the Court expresses no opinion as to the disposition of a renewed motion upon the basis of a more complete record.

## OPINION

■ Substantial reliance by plaintiff is placed upon the deposition of Cliff Liljedahl, the manager of the subsidiary, Vent Control, which, when construed in the light most favorable to plaintiff, establishes the following: Vent Control manufactures nothing, but distributes products for other subsidiaries of defendant Keller as well as certain unrelated companies (Tr. 4–5); although Vent Control maintains a depositary account, only Keller can draw from it (Tr. 6, 15); the petty cash account has a balance of approximately $300 (Tr. 7); Vent Control must buy from Keller-owned companies and Keller advises it of what products should be sold (Tr. 13); managers of the various Keller subsidiaries have a working agreement by virtue of which one company will not compete in the territory of another (Tr. 18); Keller employees check on the progress at Vent Control and policy guidelines are also established by Keller (Tr. 23); Keller controls price changes (Tr. 24); goods of other Keller subsidiaries are not paid for but are consigned

---

4. Cf. Leach Co. v. General Sani-Can Mfg. Co., 393 F.2d 183 (7 Cir. 1968).

to Vent Control without an exchange of money (Tr. 24, 26); the manager's salary is paid by Keller (Tr. 31). Mr. Liljedahl, however, did state that he did not know whether the people who paid him were acting for Keller or for Vent Control (Tr. 39).

Here, as in the *Beech* cases, it appears that actual corporate control and not individual control is being exercised. Although this distinction is a fine one, the absence of any information to the contrary precludes the Court from speculating on the actual corporate interrelationships. Accepting the Liljedahl deposition as revealing an accurate representation of the corporate interrelationships between Vent Control and Keller, although not binding Keller in the future course of this litigation, the Court holds that service upon Vent Control was sufficient to vest the Court with threshold jurisdiction over Keller Industries, in light of *Cannon* and its progeny. In so holding, the Court has considered the failure of Keller to come forward with facts which might rebut the impression created by the deposition.[5] Keller and its subsidiaries apparently have not abused the privilege given them under state statutes to conduct their business in corporate form. Although cooperation between parent and subsidiary alone is an insufficient basis under *Cannon* on which to premise jurisdiction, such cooperation in the instant case which necessarily follows from the practical identity of the officers and directors of each company, plus the additional controls revealed in the deposition, satisfy at least the threshold burden on plaintiff. Although the *Beech* cases may be distinguishable as involving a unique parent-subsidiary relationship revealed by the agreements before the respective courts,

and production of Keller's agreement, if any, might have rebutted the inferences which the Court is constrained to draw, on the present state of the record jurisdiction must be retained.

Accordingly, defendant's motion to dismiss, construed as a motion for summary judgment pursuant to Rule 56(b), must be denied.

## ORDER

■ ORDERED that the motion of defendant to dismiss the complaint for lack of in personam jurisdiction, construed as a motion for summary judgment, is denied.[6]

### On Motion to Amend

On January 6, 1969, the Court entered an order denying defendant's motion to dismiss for lack of in personam jurisdiction. Defendant now moves, pursuant to 28 U.S.C. § 1292(b), for an amendment to that order which would recite, in the language of the statute, that said order:

"involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation * * *"

By virtue of such amendment defendant wishes to file with the Court of Appeals for the Second Circuit a petition for permission to appeal pursuant to Rule 5, Fed.R.App.P. Defendant also seeks a stay of proceedings in this Court pending the outcome of its petition in the Court of Appeals. For the reasons stated below, defendant's motion is in all respects denied.

5. The affidavit of Henry A. Keller does not resolve the ambiguities created by the Liljedahl deposition; in addition, there was no opportunity for cross examination.

6. Defendant asserts a second basis for dismissal, that of improper venue under 28 U.S.C. § 1391(c). If, for jurisdictional purposes, the parent and subsidiary are deemed identical, it necessarily follows that for venue purposes Keller constructively does business in Connecticut through its "subsidiary". Accordingly, defendant's motion to dismiss on the ground of improper venue is likewise denied.

"[F]ederal law expresses the policy against piecemeal appeals * * *. [A court should] approach this statute somewhat gingerly lest a floodgate be opened that brings into the exception many pretrial orders." Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc., 385 U.S. 23, 24 (1966). This case is wholly distinguishable from that before the Court of Appeals in Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2 Cir. 1966), cert. denied, 386 U.S. 1035 (1967), since the effect of this Court's order is not the "death knell of the action" if unreviewed, 370 F.2d at 121, nor does this order involve "a controlling question of law." Instead, as is evident from a reading of the opinion, the Court denied defendant's motion solely on the basis of the record before it, construing the facts shown by defendant as inadequate to justify dismissal.

Insofar as the opinion of Judge Tyler in Northland Paper Co., Inc. v. Mohawk Tablet Co., 271 F.Supp. 763, 769–70 (S.D.N.Y.1967), provides authority to the contrary, the Court declines to follow it.[7] Section 1292(b) obviously does not contemplate appeals in all cases where an appellate determination that jurisdiction does not lie would terminate the litigation; otherwise, denial of nearly every motion to dismiss could be reviewed since reversal on appeal would terminate the litigation.

█ In sum, the Court having concluded that its order of January 6, 1969 does not involve a controlling question of law and appeal therefrom would not "materially advance the ultimate termination of the litigation" within the meaning of 28 U.S.C. § 1292(b), it is therefore

ORDERED that defendant's motions that the Court's order be amended and that proceedings be stayed are denied in all respects.

7. In *Northland*, the Court of Appeals refused to grant petitioner's motion for leave to appeal. Northland Paper Co.,

Inc. v. Mohawk Tablet Co., M.R. 1278 (2 Cir. June 15, 1967).