GALE BRABAND *et al.*, Plaintiffs-Appellees, *v.* BEECH AIRCRAFT CORPORATION, Defendant-Appellant.—(KOLLSMAN COMPANY, DIVISION OF SUN CHEMICAL CORPORATION *et al.*, Defendants.)

First District (2nd Division)    No. 62340

Opinion filed July 19, 1977.

STAMOS, J., specially concurring.

DOWNING, P. J., dissenting.

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin, of counsel), for appellant.

Philip H. Corboy and Associates, of Chicago (Philip H. Corboy and Patrick J. Kenneally, of counsel), for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The trial court denied the motion of Beech Aircraft Corporation (Beech) to quash the service of process. Beech objected to the jurisdiction of the court. The trial court certified the question for an interlocutory appeal pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1975, ch. 110A, par. 308). This court in its discretion under the rule allowed an appeal from the order.

The parties filed an agreed statement of facts which they amended on two occasions. The essential facts are that the suit arises from the crash of a Beech designed and manufactured plane as it approached an airport located near Frobisher Bay in the Northwest Territories of Canada. Three people on board, all pilots, were killed. The plane was purchased by Coleman Aircraft Company of Morton Grove, Illinois, and it appears that it had been based in Illinois for a period of time before the crash. It took off from Illinois on its final trip and was being ferried from Chicago to England. The plaintiffs' decedents were Illinois residents and their dependents are presently Illinois residents. The plaintiffs are administrators of the estates of two of the decedent pilots, James L. Braband and Donald R. Forsythe. The suits by the separate plaintiffs were consolidated for trial. They were brought under the Wrongful Death Act (Ill. Rev. Stat. 1970, ch. 70, pars. 1, 2).

The complaints as they pertained to Beech charged that the airplane and altimeter were designed, manufactured, assembled and sold in the condition that was not reasonably safe in that the airplane was not aerodynamically sound and was likely to crash when flown in a reasonably foreseeable manner; that the altimeter was manufactured in such a manner that it did not reflect accurate altitude readings when the

aircraft was being flown in a manner that was reasonably foreseeable; and that the altimeter was manufactured and sold without any warnings that it was likely not to reflect an accurate altitude reading when being flown in a manner which was reasonably foreseeable. Further, as a proximate result of one or more of the unsafe conditions alleged the plaintiffs' decedents were killed when the plane crashed.

■■ The plaintiffs contend that the Illinois courts have jurisdiction because Beech committed a "tortious act" in Illinois under Civil Practice Act section 17(1)(b), the "long arm statute" (Ill. Rev. Stat. 1975, ch. 110, par. 17(1)(b)). The plaintiffs also contend that Beech was present and doing business in Illinois and jurisdiction attaches under Civil Practice Act section 13.3. The plaintiffs concede that the court has not acquired jurisdiction under the "transaction of business" section of the long arm statute, section 17(1)(a). The distinction between the "present and doing business theory" and the "transaction of business" theory is that under the former a corporation that engages in a continuous and systematic course of business in the State becomes subject to that State's jurisdiction even though the subject lawsuit may have no relationship to the business that the corportion does within the State. Under the latter theory, if the corporation transacts any business within the State and a cause of action arises from that transaction then the State has jurisdiction. (See *e.g.,* *Lindley v. St. Louis-San Francisco Ry. Co.* (7th Cir. 1968), 407 F.2d 639; *Frummer v. Hilton Hotels International, Inc.* (1967), 19 N.Y.2d 533, 281 N.Y. Supp. 2d 41, 227 N.E.2d 851, *aff'd* (1967), 20 N.Y.2d 737, 283 N.Y. Supp. 2d 99, 229 N.E.2d 696.) This portion of the opinion will only deal with the issue concerning a "tortious act," section 17(1)(b). The concurring opinion will consider whether Beech was engaged in a continuous and systematic course of business in Illinois. I believe Illinois has jurisdiction because a "tortious act" was committed in Illinois, but do not believe that Beech engaged in a continuous and systematic course of business.

The Illinois Supreme Court in the case of *Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673, had occasion to consider the constitutionality of the 1955 amendments to sections 16 and 17 of the Civil Practice Act. Section 16 concerns itself with the manner of personal service of process outside of the State under the long arm statute and is not pertinent to this opinion. The amendments to those sections authorized the entry of judgments *in personam* on personal service of summons outside of the State in enumerated classes of cases. The defendant in *Nelson* was a Wisconsin resident who sent one of his employees into Illinois to deliver an appliance. While in Illinois the employee allegedly negligently injured the plaintiff. The defendant in *Nelson* contended that he was denied due process of law in violation of the fourteenth amendment of the

Constitution of the United States and section 2 of article II of the Constitution of Illinois. The *Nelson* court commented that:

> "Since *Pennoyer v. Neff*, 95 U.S. 714, was decided in 1878, significant social, technological, and legal developments have occurred. Rigid concepts have yielded to fiction, and fiction has yielded to forthright and realistic considerations of fairness in the determination of what constitutes jurisdiction to determine personal rights. * * * The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy. *The limits on the exercise of jurisdiction are not 'mechanical or quantitative' (International Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945),) *but are to be found only in the requirement that the provisions made for this purpose must be fair and reasonable in the circumstances,* * * *."* (Emphasis added.) 11 Ill. 2d 378, 383-84.

The *Nelson* court also quoted from *International Shoe*:

> " ' * * * [D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he has certain *minimum contacts* with it such that the maintenance of the suit *does not offend "traditional notions of fair play and substantial justice."* ' (326 U.S. at 316.)" (Emphasis added.) (11 Ill. 2d 378, 384.)

Again *Nelson* quotes from *International Shoe*:

> "[T]he demands of due process 'may be met by such contacts of [the defendant] with the state of the forum as make it reasonable, in the context of our federal system of government, to require the [defendant] to defend the particular suit which is brought there. An "estimate of the inconveniences" which would result to the [defendant] from a trial away from its "home" or principal place of business is relevant in this connection.' (326 U.S. at 317.)" 11 Ill. 2d 378, 384-85.

The *Nelson* court determined the intent of the legislature:

> "Sections 16 and 17 of the Civil Practice Act reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause." (11 Ill. 2d 378, 389.)

The court in *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 436, 176 N.E.2d 761, reiterated the interpretation of the legislative intention.

The *Gray* case in 1961 again examined the question of jurisdiction under the long arm statute. One of the defendants, Titan Valve, was a foreign corporation that manufactured safety valves in Ohio. One of its

valves was incorporated into a water heater that exploded in Illinois. Titan Valve did not do business in Illinois, had no agent in Illinois and sold the valve to the manufacturer of the water heater outside of the State of Illinois. The court there in finding that Illinois had jurisdiction commented on *Nelson*:

> "The *ratio decidendi* [in *Nelson*] was that Illinois has an interest in providing relief for injuries caused by persons having '*substantial contacts* within the State.' A standard of fairness or reasonableness was announced, within the limitation that defendant be given a realistic opportunity to appear and be heard. * * *
>
> Under modern doctrine the power of a State court to enter a binding judgment against one not served with process within the State depends upon two questions: first, whether he has certain minimum contacts with the State (see *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. ed. 95, 102), and second, whether there has been a reasonable method of notification. (See *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 90 L. ed. 95, 104-105; *Nelson v. Miller*, 11 Ill. 2d 378, 390.)" (Emphasis added.) 22 Ill. 2d 432, 436-37.

■■ The word "tortious" must be examined in the case at bar bearing in mind the due process tests for jurisdiction as established by the case law: fair and reasonable in the circumstances; minimal contacts so that the suit does not offend traditional notions of fair play and substantial justice; contacts with the State that make it reasonable for a defendant to defend in a foreign State when estimating the inconveniences, and also the court's interpretation in *Nelson* and in *Gray* that the intent of the legislature was that section 17 of the Civil Practice Act reflected a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by due process. In *Nelson* the court said that the word "tortious" can be used to describe conduct that subjects the actor to tort liability and for that purpose the Restatement so uses it. (Restatement of Torts §6 (1934).) "It does not follow, however, that the word must have that meaning in a statute that is concerned with jurisdictional limits." (11 Ill. 2d 378, 392.) In *Poindexter v. Willis* (1967), 87 Ill. App. 2d 213, 217-18, 231 N.E.2d 1, the court in finding jurisdiction over the nonresident defendant said that the word "tortious" when used under section 17(1)(b), "* * * is not restricted to the technical definition of a tort, but includes any act committed in this state which involves a breach of duty to another and makes the one committing the act liable to respondent in damages." In *United States Dental Institute v. American Association of Orthodontists* (N.D. Ill. 1975), 396 F. Supp. 565, 571, the court in finding jurisdiction in an antitrust case made the same statement.

■■ Considering the expansive definition of the word "tortious" as stated in the case law, I believe that a tortious act was committed by the delivery into Illinois of a plane that was allegedly unreasonably dangerous. A tort to be an actionable wrong, requires a duty, a breach of the duty and an injury. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 541, 301 N.E.2d 307.) The chain culminating in the death of the plaintiffs' decedents began in Kansas with the breach of the duty when the allegedly defective plane was manufactured. That condition persisted until it became a cause of action with the crash in Canada causing the deaths. Between the manufacture and the crash the allegedly defective plane was purchased by an Illinois corporation and was based in Illinois for a period of time. A duty was owed to the residents of Illinois. The injury in the instant case is to the plaintiffs who reside in Illinois. Whether injury or death Illinois has the right to provide redress against those who inflict injuries upon "those within the ambit of the State's legitimate protective policy". (11 Ill. 2d 378, 384.) The concept that a party commits himself to this court's jurisdiction by a single act is not unusual. The court has sustained jurisdiction under 17(1)(a) in *Ward v. Formex Inc.* (1975), 27 Ill. App. 3d 22, 325 N.E.2d 812; *First Professional Leasing Co. v. Rappold* (1974), 23 Ill. App. 3d 420, 319 N.E.2d 324; *Colony Press, Inc. v. Fleeman* (1974), 17 Ill. App. 3d 14, 308 N.E.2d 78, and *Cook Associates, Inc. v. Colonial Broach & Machine Co.* (1973), 14 Ill. App. 3d 965, 304 N.E.2d 27. The word "tortious" considering the history of the word in its context in the Civil Practice Act should include the delivery of the allegedly defective plane.

■■ The determination that "tortious" includes the delivery of the plane does not conclude the issue of jurisdiction. Thus far, due process requirements have been used to analyze the word "tortious." Now the facts alleged in the complaint must be considered to determine if the allegations measure up to the constitutional demands of due process. Due process requires minimum contacts. Not all tortious acts necessarily satisfy minimum contacts. In *McBreen v. Beech* (7th Cir. 1976), 543 F.2d 26, the court found that the tort of libel was committed by the defendant in Illinois but the defendant did not have the minimum contacts with Illinois and consequently there was no jurisdiction. I believe that in the case at bar there were minimum contacts to satisfy due process. The relationship between the parties that concerns us here is the allegedly defective plane and the damages to the plaintiffs. The situs of the crash which caused the death is wholly fortuitous and is an insignificant factor in the relationship of these parties to the lawsuit. The significant factors are the manufacturing of the allegedly defective plane and the contact that the plaintiffs and their decedents had with the plane. The

manufacturing took place in Kansas. The most significant relationship between the decedents and the plane was centered here in Illinois where the plane was based and where the decedents boarded the plane and started their trip to England. The pecuniary loss resulting from the loss of income and moral training and superintendence of education occurred here in Illinois. See Illinois Pattern Jury Instructions, Civil, No. 31.04 (2d ed. 1971).

It is not offensive to "traditional notions of fair play and substantial justice" to say to the manufacturer of a transient product such as an airplane that it must defend the lawsuit in a reasonably foreseeable place. Indeed, in *Gray*, at page 442, the court noted that it was not unjust to hold a corporation answerable to a suit in another State where it elects to sell its product for ultimate use in that State. In the case at bar the ultimate use of the product was in Illinois as well as in a number of other places. In considering the reasonableness of requiring the corporation to defend the suit away from its principle place of business it is proper for the court to "estimate the inconveniences." The inconveniences in trying this case in the Northwest Territories of Canada where all the parties are residents of midwestern states is rather obvious. As between the residence of the defendant in Kansas and the plaintiff in Illinois the case is comparable to *Gray* where the court found jurisdiction in Illinois.

The Restatement (Second) of Conflicts of Laws §37 (1971) provides: "A State has power to exercise judicial jurisdiction over an individual who causes effects in the State by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the State make the exercise of such jurisdiction unreasonable."

The rationale given is that a State has a natural interest in the effects of an act within its territory and may exercise jurisdiction provided that the nature of the effects and the defendant's relationship were such to make the exercise fair and reasonable. An example is given of a defendant who explodes dynamite close to the border of the plaintiff's State where the plaintiff is injured. The example suggests that even without any other relationship the defendant would be subject to jurisdiction in the plaintiff's State. Similarly, in the case at bar, the plaintiffs are Illinois residents and they have suffered injuries as a result of an occurrence that took place outside of the State of Illinois. The rationale given in the example in the Restatement is that the effects could have been anticipated and were highly dangerous to persons. The effects that could be caused by a defective plane are equally to be anticipated. In addition, there were substantial contacts between Beech and the plaintiffs prior to the crash as previously mentioned which makes the exercise of jurisdiction by the

State of Illinois fair and reasonable in the circumstances. *Nelson,* at 384. Also see to the same effect Nev. Rev. Stat. tit. 2, ch. 14, §14.080 (1973).

For these reasons I would affirm the order of the trial court.

Affirmed.

Mr. JUSTICE STAMOS, specially concurring:

I would also affirm the order of the trial court denying the motion of defendant, Beech Aircraft Corp. (hereinafter "Beech"), to quash service of process and to dismiss the complaint for lack of jurisdiction. However, in my estimation, defendant is amenable to service of process in Illinois by virtue of its contractual relationship with its distributor, Hartzog Aviation Co. (hereinafter "Hartzog").

Section 13.3 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 13.3) provides for service on a corporation as follows:

> "A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of said corporation found anywhere in the State; or, (2) in any other manner now or hereafter permitted by law. A private corporation may also be notified by publication and mail in like manner and with like effect as individuals."

Section 16(1) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 16(1)) provides in part as follows:

> "Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State; * * *."

Plaintiff concedes that Beech has no registered agent in the State of Illinois, and does not suggest that the directorates of Beech and Hartzog are interlocking. The issue before this court, therefore, is whether the office of Hartzog is agent in fact for service of process upon Beech.

Section 16 of the Civil Practice Act reflects a conscious legislative purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause. (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 389, 143 N.E.2d 673, 679.) Within this context, modern constitutional principles governing the exercise of personal jurisdiction over a foreign corporation were enunciated by the United States Supreme Court in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154. In *International Shoe,* the court noted that continuous and systematic corporate operations may establish "sufficient contacts or ties with the state of the forum to make it reasonable and just according to our

traditional conception of fair play and substantial justice to permit the state to enforce the obligation" incurred there. 326 U.S. 310, 320, 90 L. Ed. 95, 104, 65 S. Ct. 154.

Where the business done by a foreign corporation in the State of the forum is of a sufficiently substantial nature, it has been held permissible for the State to entertain a suit against such corporation even though the cause of action arose from activities entirely distinct from its conduct within the State. (*Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E. 761.) Similarly, where the facts indicate that one corporation so controls the affairs of another corporation that the two entities are essentially one, the court will disregard the corporate entities and hold service of process on one corporation effective as to the other. See *Rymal v. Ulbeco, Inc.* (1975), 33 Ill. App. 3d 799, 338 N.E.2d 209.

Application of these principles to the case at bar presents two questions for analysis:

> (1) Whether the activities of Hartzog, defendant's distributor, are chargeable to defendant; and
>
> (2) Whether such activities are sufficiently pervasive to justify the exercise of jurisdiction in Illinois over a cause of action not directly related to these activities.

In my estimation, there can be little question but that the activities of Hartzog, defendant's distributor, are attributable to defendant foreign corporation. The amount of control which Beech was capable of exercising is apparent from consideration of several determinative factors. These salient factors appear in the contract between Beech and Hartzog. Implementation of this contract is outlined in the deposition of Karl Berg, a marketing manager employed by Beech Aircraft.

The distributorship arrangement between Beech and Hartzog indicates that Beech enjoyed extensive control over its products in the State of Illinois and considerable supervision over its distributor. For example:

> a. Hartzog is required to submit purchase orders for all airplanes ordered by Hartzog under the agreement and all such purchase orders are subject to approval and acceptance by Beechcraft at its principal place of business;
>
> b. Hartzog is permitted to sell Beechcraft airplanes within a given area of the State of Illinois;
>
> c. Hartzog is required to devote its full sales efforts to the sales of such aircraft;
>
> d. Hartzog is required to price the aircraft it sells;
>
> e. Hartzog is required to maintain sales control records and advertise Beechcraft airplanes exclusively and completely in accord with the directives and policies of Beechcraft;

f. Hartzog is required to perform all warranty, maintenance and repair service on all Beechcraft airplanes covered by warranty provisions of purchase which aircraft were in Hartzog's area of responsibility during their warranty period and regardless of whether or not they were airplanes sold by Hartzog;

g. Hartzog agreed to provide any and all facilities at its place of business which were necessary by Beechcraft to distribute and sell Beechcraft products;

h. Hartzog could not move its place of business without obtaining the prior written consent of Beech. In addition, Beechcraft through its officers and employees could enter Hartzog's sales area to make marketing surveys or gather any other information Beech may desire and to call upon and examine the facilities and/or personnel of Hartzog during business hours and to do anything else which Beech believed necessary and proper for increased sales;

i. Beech could inspect the complete operation of Hartzog from time to time including the business facilities, records, supplies and personnel;

j. Beechcraft trademark was allowed to be used by Hartzog;

k. Under certain conditions, Beechcraft could terminate the sales agreement without any advance notice.

Moreover, the testimony of Karl Berg describes the occasional but direct intervention of the Beech Aircraft Corp. into the Illinois market and further establishes defendant's voluntary invocation of the benefits of the State of Illinois. (*Muffo v. Forsyth* (1976), 37 Ill. App. 3d 6, 345 N.E.2d 149.) Berg's testimony has been abstracted as follows:

" * * * With regard to business activities in Illinois, Berg testified among other things as follows: That he was employed directly by Beech Aircraft Corporation in Wichita, Kansas, and had been for nine years and that this present position as of December 12, 1974 was that of marketing manager for reciprocating aircraft. That he had held previous sales managerial positions for the prior six to eight years. As a consequence of his managerial duties, Mr. Berg testified that on one occasion, he visited Hartzog Aviation with the express purpose of promoting the sale of Beech aircraft known as a 'Duke' model to a prospective customer of Hartzog. That he himself was actually involved in the promotion of the aircraft to the sales prospect, including coming into personal contact with the prospect. That he engaged in flying the Beechcraft airplane Hartzog desired to sell to the prospect. No sale was consummated as a result of this visit. Mr. Berg testified that he had visited Hartzog Aviation probably a dozen times within his nine years at Beech. In addition, Mr. Berg testified that in the spring of 1974,

Beechcraft, in conjunction with Hartzog, sponsored a sales program in Illinois called 'An Evening with Beechcraft' in which four of the Wichita based employees came into Illinois and put on a film and slide presentation and hosted a dinner for sales prospects in Illinois. There were approximately 60 prospects who attended that dinner. No sales were consummated at that time."

Such evidence overwhelmingly demonstrates a series of corporate operations by Beech Aircraft, both directly and through its distributor, sufficient to establish its presence in the State of Illinois within the context of *International Shoe*. I note that similar results have obtained in various other jurisdictions which have had occasion to consider distributor contracts akin to that involved in the instant case. *Szantay v. Beech Aircraft Corp.* (E.D.S.C. 1965), 237 F. Supp. 393, *aff'd*, 349 F.2d 60 (4th Cir. 1965); *Dunn v. Beech Aircraft Corp.* (E.D. Pa. 1967), 276 F. Supp. 91. See also *Scalise v. Beech Aircraft Corp.* (E.D. Pa. 1967), 276 F. Supp. 58; *Delray Beach Aviation Corp. v. Mooney Aircraft, Inc.* (5th Cir. 1967), 332 F.2d 135.

Nor can it be doubted that these activities are sufficiently pervasive to justify the exercise of jurisdiction over a cause not directly related to such activities. The annual volume of business conducted by Hartzog does not appear of record. However, it is not disputed that the day-to-day sales and service of Beech Aircraft conducted by an apparently solvent firm, such as Hartzog Aviation, constitutes activity which may be fairly categorized as a substantial and systematic business operation. As previously noted, within this context, Beech controls Hartzog's sales and service policies, facilities, public relations, accounts and records, and marketing practices. This activity leaves small doubt that Beech has intentionally entered the Illinois market and is actively doing business in this State. Rather than use its own directly employed personnel, the corporation chose to enter into the State by acquiring broad supervisory control over a distributor-sales-corporation. The nature of this broad control and the extent to which it was exercised is adequate basis for finding Hartzog to be the agent of Beech and, thus, the proper and capable recipient of service of process upon Beech.

Defendant's reliance upon the case of *Aanestad v. Beech Aircraft Corp.* (9th Cir. 1974), 521 F.2d 1298, is not controlling. In *Aanestad*, with respect to a distributorship arrangement similar to that at issue in the base at bar, the court held that the activities of Beech through its subsidiary were not sufficiently pervasive to justify jurisdiction in California of a cause of action unrelated to such activities. It does not appear that evidence similar to the Berg deposition was considered by the court in determination of that appeal and the court expressly refrained from ruling on the question of whether the activities of a subsidiary may subject the parent

corporation to jurisdiction in the state in which the subsidiary is incorporated or doing business.

Similarly, the case of *Cannon Manufacturing Co. v. Cudahy Packing Co.* (1925), 267 U.S. 333, 69 L. Ed. 634, 45 S. Ct. 245, is inapplicable to the facts of the instant case. That case held only that the mere presence of an independent, albeit wholly owned, subsidiary may not be equated with the presence of the parent for purposes of establishing that the parent was "doing business" in the forum jurisdiction in order to justify the exercise of jurisdiction over the parent. In the case *sub judice*, the activities of Hartzog and Beech appear to have been joint. The broad control exercised over the distributor and the direct intercession of Beech employees in Illinois serves to distinguish the rationale of *Cannon* from that of the case at bar and establishes the "minimum contacts" requisite to the exercise of *in personam* jurisdiction under *International Shoe*.

In my opinion, the order of the trial court denying defendant Beech's motion to quash service of process and to dismiss the cause for lack of jurisdiction was proper and for the aforementioned reasons should be affirmed.

Mr. PRESIDING JUSTICE DOWNING, dissenting:

For the following reasons I would reverse the circuit court of Cook County.

Plaintiffs in their brief in this court, in substance, asserted they would demonstrate that jurisdiction properly attaches in Illinois either (a) when defendant is "present" and "doing business" in Illinois, or (b) when defendant Beech committed a tortious act within this State (Ill. Rev. Stat. 1971, ch. 110, par. 17(1)(b)); *i.e.*, "defendant's negligent causation of pecuniary loss to Illinois resident survivors of the two accidents."

Certain facts must be restated. The Beech aircraft was not manufactured in Illinois. It was manufactured by a Delaware corporation (Beech) whose principal office was in Kansas. It was originally sold in 1966 to a firm located in Texas; then in 1968, the plane was sold to a firm located in Nevada; then in 1971, sold to Coleman Aircraft Corp. (Coleman) of Morton Grove, Illinois, which firm, in 1971, arranged to sell the plane to a British company. While the plane was being flown to the British firm, the ill-fated accident occurred in Canada on December 10, 1971.

There is nothing in the record to indicate or suggest that (1) the subject plane was manufactured in Illinois; or (2) defendant Beech or Hartzog Aviation, Inc., of Rockford, Illinois, ever sold or had any connection with the sale of this plane to anyone in the state of Illinois; or that the decedents had any connection with Coleman. With this by way of background, it is important to examine the two theories of my colleagues.

At the outset it is to be noted that once jurisdiction has been challenged, the burden of proving its presence rests on the party asserting it. *Houghton v. Piper Aircraft Corp.* (1975), 112 Ariz. 365, 542 P.2d 24, 26; *Williams v. Connolly* (D.C. Minn. 1964), 227 F. Supp. 539.

### Tortious Act Theory

Was a tortious act committed in Illinois so as to ensnare Beech in this jurisdictional quagmire? My answer is "no." I cannot stretch the words of section 17(1)(b) to believe the legislature ever foresaw such a result, or if they did, then I think the statute violates the due process rights of Beech.

Section 17, so far as pertinent, provides:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

❋ ❋ ❋

(b) The commission of a tortious act within this State;

❋ ❋ ❋

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section." Ill. Rev. Stat. 1971, ch. 110, par. 17(1)(b), (3).

The affirming opinion states: "I believe that a tortious act was committed by the delivery into Illinois of a plane that was allegedly unreasonably dangerous." Yet there is nothing in the record to indicate either Beech or Hartzog had anything whatsoever to do with that delivery. It might be argued that when Beech manufactured the plane and introduced it into the stream of commerce by a sale to a Texas firm, it would be ultimately responsible for a delivery in Illinois. I am not prepared to stretch that fiction to such an absurd conclusion.

The plaintiffs base their claim on the theory of strict liability of Beech as the airplane manufacturer. Because the plane, at least five years after its manufacture in Kansas, was in Illinois prior to its last flight, it is contended, "[a] duty was owed to the residents of Illinois."

In the cited case of *Mieher v. Brown* (1973), 54 Ill. 2d 539, 541, 301 N.E.2d 307, a case involving an auto-truck accident in Illinois, the supreme court concerned itself with the question of common law negligence. In so doing, it discussed a duty owed by the truck manufacturer to the decedent. In discussing the issues of duty to examine reasonable care in designing a motor vehicle and the question of foreseeability, the supreme court placed some restraint on the doctrine of

duty. In my opinion there is nothing in that case to provide the plaintiffs under these circumstances a steady prop upon which to base jurisdiction.

It is said that the word " 'tortious' * * * should include the delivery of the allegedly defective plane." But who delivered this plane in Illinois? Not Beech or Hartzog. Certainly this type of prop is much too unstable to support a theory of jurisdiction.

It should be noted that nothing I say in any way suggests plaintiffs might not have a strict product liability case against Beech. I am simply saying the courts of Illinois should not be used to find out.

Nor do I think the *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154; *Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673; or *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761, cases support plaintiffs' theory of jurisdiction under the "tortious act theory."

*International Shoe*[1] did not involve a tortious act. It held that a Delaware corporation employing shoe salesmen in the state of Washington rendered itself amenable to proceedings in Washington to recover unpaid contributions to the State unemployment compensation.

*Nelson* involved an Illinois resident who was injured in Illinois while assisting an employee of a Wisconsin firm that was delivering a gas cooking stove sold to the plaintiff in Illinois. The factual background is as different from the instant case as day is from night. Thus, in discussing section 17(1)(b) and the word "tortious," the supreme court said, "[t]he essential question in cases of this type is where the action is to be tried." As said by Mr. Justice Schaeffer:

> "The substantial objective of the new jurisdictional provisions is to enable the plaintiff to obtain a trial of the issues of liability and of damages in this State, *when the circumstances make it the appropriate and convenient forum for that purpose*." (Emphasis added.) 11 Ill. 2d 378, 393.

As has been noted, Beech was not the author of any act or omission within the State of Illinois which established circumstances to make this State the appropriate forum.

*Gray* involved a water heater, manufactured in Ohio, which exploded in Illinois injuring the plaintiff, an Illinois resident. As stated by the supreme court in considering section 17(1)(b), a jurisdictional question depends on whether the tortious act was committed in Illinois. The supreme court said:

> "The wrong in the case at bar did not originate in the conduct of a servant physically present here, but arose instead from acts

---

[1] For a recent discussion of a State court's exercise of in rem or quasi-in rem jurisdiction and the "minimum contact" test of *International Shoe*, see *Shaffer v. Heitner* (June 24, 1977), 45 U.S.L.W. 4849.

performed at the place of manufacture. Only the *consequences* occurred in Illinois. It is well established, however, that in law *the place of a wrong is where the last event takes place which is necessary to render the actor liable.*" (Emphasis added.) 22 Ill. 2d 432, 435.

In the instant case the consequences, and the last event necessary to render Beech possibly liable, occurred in Canada. The consequences and last event in both *Nelson* and *Gray* clearly took place in Illinois. To suggest that the consequences and last event in the subject case took place in Illinois is to strain reality beyond reasonable credibility.

To determine if there are minimum contacts necessary to satisfy due process requirements necessitates a case-by-case examination of the facts. What are the minimum contacts of Beech to Illinois in this case? It is suggested that because the plane was centered in Illinois when the decedents boarded the plane and started their trip to England, there is sufficient minimum contact to meet due process requirements. I think not. Beech had nothing to do with the plane being in Illinois, nor the trip to England. So far as the record before this court indicates, the only contact the decedents had with the plane occurred in the fatal trip. As was said in *McBreen v. Beech Aircraft Corp.* (7th Cir. 1976), 543 F.2d 26, 32, "\* \* \* there remain due process outer limits on the reach of a state's long-arm jurisdiction." The thin thread of pecuniary loss to the plaintiffs in Illinois, in my opinion, is too weak a connection to lift these facts outside the reach of the due process clause. I believe the minimum contact standard elucidated in *International Shoe* is violated.

It is suggested that Beech caused the effects in the State of Illinois, and the effects could have been anticipated. What effect? Plaintiffs are the administrators of the estates of two deceased pilots, both of whom were Illinois residents. As I understand the real effect of the trial court's action and its affirmance by this plurality opinion, the Illinois residents are to be protected regardless of due process constraints. I do not find any tortious act in Illinois. To hold that there is such a tortious act, in my opinion, clearly violates the due process rights of Beech.

Accordingly, I cannot find that plaintiffs should prevail under the so-called "tortious act theory."

### Doing Business Theory

I concur with Justice Jiganti's conclusion that he does "not believe that Beech engaged in a continuous and systematic course of business" in the State of Illinois. It is said that defendant Beech is amenable to service of process in Illinois by virtue of its contractual relationship with its distributor Hartzog. Section 13.3 of the Civil Practice Act provides the

nexus between nonresident Beech and Hartzog. The basis for this jurisdiction is that the office of Hartzog is agent-in-fact for service of process upon Beech. In other words, Beech is present and doing business in Illinois.

Because Hartzog had a sales agreement with Beech, whereby it acted as a franchisee for the sale of new Beech airplanes in part of the State of Illinois, and to perform service and maintenance on customer airplanes, it is concluded that Beech is present within the State of Illinois within the context of *International Shoe*. Again I disagree on the basis that the facts in *International Shoe* are sufficiently distinguishable so as to destroy any support it might offer. In that case the salesmen were regularly employed and resided in the State of Washington; their principal activities were confined to that State; and they were compensated based upon the amount of their sales in the State of Washington. A dispute arose over whether their out-of-State employer was required to pay to a State unemployment compensation fund. No one could really argue that there were sufficient contacts or ties to make it reasonable and just to enforce such obligations against the out-of-State employer. Those contacts did not offend the traditional notions of fair play and substantial justice.

But, so far as this record shows, there can be no comparison between the activities of Beech or Hartzog in Illinois and the activities of the shoe salesmen in the State of Washington. As was said in *International Shoe*, "[w]hether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." (326 U.S. 310, 319, 90 L. Ed. 104, 66 S. Ct. 154.)) I do not believe that due process is satisfied in the case at bar because, in my opinion, the activities of neither Beech nor Hartzog constitute "doing business" in Illinois.

What then is "doing business"? In the recent case of *Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 368 N.E.2d 88, our supreme court discussed this phrase as it is used in the context of the venue statute. In doing so it distinguished the phrase as it is used in a jurisdictional context. It is significant to note the following language:

> "No firm rule as to what constitutes doing business for jurisdictional purposes is discernible from the cases. As Judge Learned Hand stated: 'It is quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass.' *Hutchinson v. Chase & Gilbert, Inc.* (2d Cir. 1930), 45 F.2d 139, 142." 67 Ill. 2d 321, 327.

So now we must look at just what facts are involved in this case. Beech had a sales agreement with Hartzog whereby the latter was franchised to

sell and service Beech airplanes in 19 counties of Illinois.[2] The agreement was for one year with a 30-day termination clause. Although a copy of the agreement in the record was for 1973-1974, and the accident took place in 1971, we can find nothing in the record as to whether a similar agreement was in effect on December 10, 1971. As this point was not raised, we assume for purposes of this discussion that such an agreement was in effect in 1971. Considerable significance is placed upon the provision of the Beech-Hartzog agreement, which by its terms has as its stated objective the sale of seven airplanes. But rather than relying solely upon boiler plate provisions in a franchise agreement, it seems to me that it is equally meaningful to stress the realities of the relationship.

Beech is incorporated in Delaware and has its offices and principal place of business in Wichita, Kansas. Beech has no officers, directors, or employees living, residing, or stationed in Illinois. It has no offices or other places of business in Illinois. Beech is not qualified, authorized, or otherwise licensed or chartered to do business in Illinois. Beech owns no real estate in Illinois and pays no taxes here. It holds no licenses, charters, or permits issued by this State or by any subdivision thereof. Beech has appointed no agent for service of process in Illinois.

The test for "doing business" should be a pragmatic one. (*Bryant v. Finnish National Airline* (1965), 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439.) As in the *International Shoe* case, the activity within the State should have that continuity and permanence which gives rise to the liability sued on. It should be a continuous and systematic course of business. More contacts are required than sales and sales promotion within the State of Illinois by independent nonexclusive sales representatives. *Houghton v. Piper Aircraft Corp.* (1975), 112 Ariz. 365, 542 P.2d 24, 27; *cf. Lindley v. St. Louis-San Francisco Ry. Co.* (7th Cir. 1968), 407 F.2d 639, 642, 643.

Hartzog is not a party defendant. Neither Beech's activities in Illinois, nor those of Hartzog in Illinois, had anything to do with this cause of action. To say otherwise is to engage in fiction bordering on fantasy. Applying a realistic, pragmatic test to the facts before us, Beech's activities in Illinois—if any—are not so pervasive to justify jurisdiction in Illinois of a cause of action not related to Beech's alleged Illinois activities. *Aanestad v. Beech Aircraft Corp.* (9th Cir. 1974), 521 F.2d 1298, 1301, *cert. denied* (1974), 419 U.S. 998.

To hold this State has jurisdiction under the minimal contacts set forth in this record would subject Beech, or any similar corporation, to suit in any State of the United States. To me this would offend the traditional

---

[2] In addition to the 19 of 102 counties in Illinois, the agreement provided Hartzog was franchised in certain counties in Indiana, Michigan, and Wisconsin.

notions of fair play and substantial justice. In my opinion it would violate defendant's due process rights.

In conclusion, the delicate balancing of the rights of the *party* litigants *is* always a troublesome task. Coupled with those rights is always the problem of accommodating *witnesses*. Someone is always inconvenienced. But on balance it would appear, that aside from the *attorneys*, a trial of this cause in Illinois would inconvenience more people. I do not think plaintiffs have established a proper basis for jurisdiction in Illinois. Therefore, for all of these reasons I would reverse and remand with directions that the circuit court of Cook County grant the motion to quash service of process and to dismiss for lack of jurisdiction.