**BODINE'S, INC., an Illinois Corporation, Plaintiff,**

v.

**SUNNY–O, INC., a Foreign Corporation, Defendant.**

No. 79 C 4272.

United States District Court, N. D. Illinois, E. D.

May 23, 1980.

Henry C. Krasnow and Joseph M. Cotugno, Mandel, Lipton, and Stevenson, Robert H. Krasnow, Chicago, Ill., for plaintiff.

Shalom L. Kohn and Henry L. Mason III, Sidley & Austin, Chicago, Ill., Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This action arises out of the purchase by plaintiff of orange juice concentrate from defendant Sunny-O, Inc. ("Sunny-O") through the auspices of an independent broker, Pilgrim Marketing, Inc. ("Pilgrim"). The complaint states that during 1978, Bodine's, Inc. ("Bodine's"), a manufacturer and distributor of orange juice and orange juice concentrates, placed a purchase order for "Grade A" orange juice concentrate with Pilgrim, a broker and distributor of orange juice products. Pilgrim then contacted Sunny-O, a manufacturer of citrus products, which agreed to sell "Grade A" orange juice concentrate to Bodine's. Bodine's arranged for shipment of the concentrate "F.O.B. Lakeland," and plaintiff received delivery of the goods by common carrier in Chicago. Plaintiff alleges that although it had contracted for "Grade A" concentrate and the concentrate containers were so labeled, in fact the concentrate was of an inferior quality due to the high percentage of wash pulp solids contained therein.

As a result, plaintiff filed this diversity action seeking recovery of $250,000 in damages under theories of breach of express and implied warranties, and of tortious fraud. In addition, based on the allegation that the tortious conduct was willful, wanton, and malicious, plaintiff seeks an additional $500,000 in punitive damages. The case now is before the Court on defendant's motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) or, in the alternative, to transfer of venue of this action to the United States District Court for the Middle District of Florida (Tampa Division) under 28 U.S.C. § 1404(a). Inasmuch as the Court would be powerless to transfer venue in the absence of valid personal jurisdiction over the defendant, the Court first will address defendant's motion directed to jurisdiction.

### I. The Illinois Long-Arm Statute

From the undisputed facts as they appear at this early stage of the proceedings, it is evident that the defendant's presence in Illinois is not such that jurisdiction could attach on the basis of its conduct of a continuous and systematic course of business in the State. *Lindley v. St. Louis-San Francisco Railway Co.*, 407 F.2d 639, 641 (7th Cir. 1968); *Braband v. Beech Aircraft Corporation*, 51 Ill.App.3d 296, 298, 9 Ill. Dec. 684, 367 N.E.2d 118 (1st Dist. 1977). Defendant is a Florida corporation with its sole place of business in Lakeland, Florida. It has no employees or agents working in Illinois, does not advertise or otherwise solicit business in Illinois, and has dealt with no Illinois corporation other than Bodine's. Thus, if personal jurisdiction over the defendant exists in this case, it does so by virtue of the Illinois Long-Arm Statute.[1]

A review of the relevant authority has convinced the Court that section 17(1)(b) of the Illinois act confers it with personal jurisdiction over the defendant on the tortious fraud claim. In *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), the Illinois Supreme Court reached a similar conclusion on facts indistinguishable in principle from those in the instant case. In *Gray*, an Illinois resident injured by the explosion of a water heater sued both the distributor of the water heater and the foreign corporation that had constructed the safety valves which allegedly were defective. At the outset, the court observed that in construing

---

1. Ill.Rev.Stat., ch. 110, § 17(1) provides:

   Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

   (a) The transaction of any business in this State;

   (b) The commission of a tortious act within this State  .   .   .

the reference in section 17(1)(b) to a "tortious act," the situs of a tort is to be governed by place of the last event necessary to render the actor liable—which in most instances is the place of the injury. 176 N.E.2d at 762–763. Thus, the court concluded that since plaintiff had been injured in Illinois as the consequence of defendant's negligence, defendant had committed a tortious act in Illinois within the meaning of section 17(1)(b).

The court observed, however, that the commission of such an act could justify the extension of personal jurisdiction over a foreign party only if to do so would not offend basic notions of due process. "[T]he relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum." *Id.* 176 N.E.2d, at 765. In examining the facts therein, the court noted that the foreign defendant had manufactured the safety valve with the intent that it be distributed in Illinois. For this reason, the court found it irrelevant that "the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State." *Id.* 176 N.E.2d, at 766. The court also observed that by intentionally distributing its product in Illinois, the foreign corporation "has undoubtedly benefitted, to a degree, from the protection" of Illinois law. Therefore, the court concluded that "[a]s a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for damage caused by defects in those products." *Id.*

■ Similarly, to the extent that plaintiff has suffered injury from the tortious conduct alleged, that injury has occurred in Illinois.[2] Thus, defendant herein has committed a tortious act within the meaning of the Illinois Long-Arm Statute. Moreover,

the Court believes that it would not offend due process to require defendant to make his defense in this forum. As did the foreign defendant in *Gray,* Sunny-O intentionally distributed its product to an Illinois resident. For the purposes of section 17(1)(b), it is immaterial that defendant received the purchase order through an independent broker, or that risk of loss shifted to the plaintiff when delivery of the order was made to the common carrier in Lakeland.

■ Defendant seeks to avoid the result dictated by *Gray* on several grounds. First, Sunny-O argues that place of injury interpretation of tortious conduct should not obtain where the injury suffered is economic rather than physical. For this proposition defendant relies solely on a stray statement made without supporting citation in *Gates Rubber Co. v. USM Corp.,* 351 F.Supp. 329, 338 (S.D.Ill.1972), *rev'd on other grounds,* 508 F.2d 603 (7th Cir. 1975), which indicated that where fraudulent misrepresentations allegedly had originated in New York, the cause of action arose in New York rather than in Illinois, the situs of the injury. From the context of this statement, however, it is clear that the court was addressing a choice of law question rather than interpreting section 17(1)(b). Indeed, the statement in *Gates* is consistent with the Illinois rule that the place of the act which forms the basis of the tort governs the question of whether the conduct constitutes a tort. I.L.P. Torts § 6 at 358. Moreover, courts construing section 17(1)(b) consistently have declined to distinguish between economic and physical injury. *See e. g. Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1142 (7th Cir. 1975) (patent infringement); *Southeast Guaranty Trust Co., Ltd. v. Rodman and Renshaw, Inc.,* 358 F.Supp. 1001, 1009 (N.D.Ill.1973) (fraudu-

---

**2.** In its brief defendant appears to suggest that the complaint is defective in that it fails to allege that injury was suffered in Illinois. Plaintiff's responsive brief clarifies that substantially all, if not all, damage suffered occurred in Illinois. Thus, rather than dismiss

the complaint for failure to allege this specifically, the Court will allow plaintiff twenty days from the date of this memorandum opinion and order to amend its pleading.

lent misrepresentation).[3] Thus, the Court finds no basis for treating differently economic and physical injury under section 17(1)(b).

Second, defendant argues that the exercise of personal jurisdiction would be inappropriate under the most recent Supreme Court pronouncement in this area, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In that case, the plaintiffs, residents of New York, had purchased a new Audi automobile from a New York dealer in 1976. The next year, while driving through Oklahoma en route to their new home in Arizona, they suffered a rear end collision resulting in a fire and severe injury to various members of the family. Plaintiffs thereafter filed suit in Oklahoma state court against the manufacturer; the importer, Volkswagen, Inc.; the regional distributor, World-Wide Volkswagen, Inc.; and the retailer, Seaway Volkswagen, Inc. Although neither World-Wide nor Seaway had carried on any activity whatsoever in Oklahoma, the state courts upheld the exercise of personal jurisdiction on the ground that it was foreseeable that the automobile would be used in Oklahoma.

On review, the Supreme Court reversed, rejecting the view that jurisdiction could be premised on "one, isolated occurrence and whatever inferences can be drawn therefrom: the *fortuitous circumstance* that a single Audi automobile, *sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma.*" *Id.* at 566. (Emphasis supplied.) The Court observed that for purposes of due process it is irrelevant whether a party could foresee that its product might wend its way into the forum state. "Rather, it is [relevant] that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 567. The Court, as did the Illinois Supreme Court in *Gray*, observed that such foreseeability ex-

ists when a party "purposefully avails itself of the privilege of conducting activities within the forum State." *Id., citing Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The Court then stated:

> Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. *Compare Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961).

100 S.Ct. at 567.

■ Rather than suggesting the invalidity of the exercise of personal jurisdiction under section 17(1)(b) herein, the decision in *World-Wide Volkswagen* only supports further the Court's view that such jurisdiction is proper. Unlike *World-Wide Volkswagen*, this case does not involve the sale of a product by a foreign corporation to a foreign resident. Nor can the presence of defendant's product in Illinois be termed a "fortuitous circumstance." Rather, the sale of the orange juice concentrate to plaintiff arose from defendant's effort to serve, directly or indirectly, the market for its product in various states, including Illinois. Thus, as in *Gray*—a case which the Supreme Court cited with approval—the exercise of personal jurisdiction over defendant herein does not offend due process.[4]

---

**3.** The defendant has attempted to distinguish these and other similarly decided cases on a variety of grounds, none of which this Court finds persuasive.

**4.** Defendant also seeks to distinguish *Gray* on the ground that the court therein appeared to assume that the use of the defendant's product in Illinois was not an isolated instance. Here, on the other hand, defendant contends that its

■ Finally, defendant suggests that *Gray* is distinguishable in that the product involved in that case was unreasonably dangerous. In *World-Wide Volkswagen*, however the Supreme Court expressly rejected the proposition that different rules of jurisdiction obtain in cases involving dangerous products:

> The "dangerous instrumentality" concept apparently was never used to support personal jurisdiction; and to the extent it has relevance today it bears not on jurisdiction but on the possible desirability of imposing substantive principles of tort law such as strict liability.

100 S.Ct. at 567 n.11. Therefore, the rule of jurisdiction set forth in *Gray* applies on equal terms to cases involving dangerous products and ordinary chattels, such as the orange juice concentrate at issue herein.

Thus, for the foregoing reasons, the Court finds that section 17(1)(b) confers it with personal jurisdiction over the defendant on the tortious fraud count.[5] A different result, however, obtains with respect to section 17(1)(a) and the contract claims.

■ As stated above, defendant Sunny-O's only contact with Illinois arises out of the transaction here at issue. This transaction was initiated by plaintiff through an independent broker; nowhere is it alleged that the broker was an agent of Sunny-O. Delivery of the goods was made to a common carrier in Lakeland, Florida. In addition, although the complaint alleges that plaintiff and defendant engaged in a number of telephone conversations with respect to the purchase, an affidavit filed by the president of Sunny-O states that the parties had no direct written or oral communication concerning the purchase. On the basis of these facts, the Court cannot conclude that defendant has sufficient minimal contacts with Illinois to justify imposition of personal jurisdiction under section 17(1)(a).[6]

■ There remains, however, the question of whether personal jurisdiction over the defendant with respect to the contract claims nonetheless may be asserted by virtue of the Court's exercise of personal jurisdiction under section 17(1)(b). Whereas personal jurisdiction conferred by residency extends generally to all conduct engaged in by the resident, it is clear that the type of jurisdiction conferred by the Illinois Long-

---

transaction with plaintiff represented the only time its product ever has been distributed in Illinois. Read in context, however, *Gray* as well as *World-Wide Volkswagen* turn not on the number of times that a defendant's products have found their way into the forum state, but rather the circumstances under which entry was made. Where a product's presence in a state is fortuitous, as in *World-Wide Volkswagen*, it cannot be said that its manufacturer has subjected itself to personal jurisdiction by seeking to serve the market in that state. On the other hand, where a product is introduced into a state due to the direct or indirect efforts of its manufacturer, as in *Gray*, jurisdiction may attach. Since defendant clearly sought to serve the market in Illinois by selling its product to plaintiff, the Court does not believe that *Gray* is rendered inapplicable merely because this is the first time that defendant has sought to serve the Illinois market.

5. Defendant also suggests that the complaint as it relates to fraud should be dismissed for failure of plaintiff to allege reliance on the representation. Read as a whole, the Court believes that such reliance can be inferred from the complaint. However, inasmuch as plaintiff will be amending other aspects of the complaint, *see* note 2, *supra*, plaintiff at that time will have an opportunity to allege reliance with more specificity.

6. Even assuming that plaintiff and defendant communicated with one another during the course of the transaction, without more this is insufficient to establish the minimum contacts necessary for jurisdiction under section 17(1)(a). In *Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill.App.3d 965, 304 N.E.2d 27 (1st Dist. 1973), the court found that long-arm jurisdiction was conferred by a single telephone call between the parties since the foreign corporation had initiated the business transaction, and the contract was to be performed in Illinois by an Illinois agency. Similarly, in *Colony Press, Inc. v. Fleeman*, 17 Ill. App.3d 14, 308 N.E.2d 78 (1st Dist. 1974), the submission of a purchase order by a foreign corporation was deemed adequate to confer personal jurisdiction under section 17(1)(a), since the foreign corporation also had initiated the transaction and the contract was to be performed in Illinois. The instant case presents none of these additional factors which would warrant a finding of personal jurisdiction under section 17(1)(a).

Arm Statute is more limited in scope. The use of the qualifying phrase "arising from" in section 17(1) "is to insure that there is a close relationship between the cause of action against a nonresident defendant and his jurisdictional activities." *Volkswagen Insurance Co. v. Whittington*, 58 Ill.App.3d 621, 16 Ill.Dec. 179, 182, 374 N.E.2d 954, 957 (1st Dist. 1978). At the very least, the statute requires that any action brought by plaintiff "be one which lies in the wake of the . . . activities by which the defendant submitted to the jurisdiction of the Illinois courts." *Id.; see also Lindley*, 407 F.2d at 641; *Braband*, 51 Ill.App.3d at 298, 9 Ill.Dec. 684, 367 N.E.2d 118; *First National Bank of Chicago v. Screen Gems, Inc.*, 40 Ill.App.3d 427, 352 N.E.2d 285 (1st Dist. 1976).

■ At a minimum, the contract and tort claims presented by plaintiff have their roots in the same transaction—the alleged sale of defective orange juice concentrate. Indeed, the contract and tort claims even might be termed as but different theories of recovery for the same cause of action. For this reason, the Court believes that it would not offend the underlying purposes of the Illinois Long-Arm Statute for the Court to treat the contract claims as pendent to the tort claim under *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), and its progeny. There is no question but that the essential elements of pendent jurisdiction are present, since the claims clearly arise out of a common nucleus of operative fact. *Id.* Moreover, the discretionary considerations of economy and convenience militate in favor of extending pendent jurisdiction in this case. *Id.* at 726, 86 S.Ct. at 1139. Judicial economy hardly would be furthered by requiring separate trials of tort and con-

tract claims which arise from the same transaction. Nor would convenience of the parties be served, as plaintiff would be compelled to travel to Florida to bring its contract action. On the other hand, as noted above, the exercise of pendent jurisdiction would be consistent with the jurisdictional requirement of section 17(1) that all actions possess a close nexus with the conduct which forms the basis of long-arm jurisdiction. Accordingly, although the Court finds that jurisdiction of the contract claims may not be asserted under section 17(1)(a), the claims nonetheless may remain in this Court as pendent to the tort claim brought by virtue of section 17(1)(b).[7]

## II. *Motion To Transfer*

■ Having determined that the Court possesses jurisdiction over defendant on both the contract and tort claims, the Court now turns to the question of whether it would be appropriate to transfer venue of this action to Florida.[8] In considering this issue, the Court begins from the premise that since plaintiff is a resident of this judicial district, its choice of venue is entitled to considerable deference. *Hess v. Gray*, 85 F.R.D. 15, 24 (N.D.Ill.1979); *Cunningham v. Cunningham*, 477 F.Supp. 632, 634 (N.D.Ill.1979). For this reason, the movant must persuade the Court that the considerations embodied in section 1404(a) weigh *heavily* in favor of transfer. *Illinois Tool Works, Inc. v. Sweatheart Plastics, Inc.*, 436 F.2d 1180, 1188 n.19 (7th Cir. 1971); *Cunningham, id.* Whether this burden has been met is a decision committed to the discretion of the Court upon a review of all the circumstances of the case. *General Foods Corp. v. Carnation Co.*, 411 F.2d 528, 533 (7th Cir. 1969); *Hess, id.*, at 23.

---

7. In *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189 (7th Cir. 1980), the court, despite finding that long-arm jurisdiction extended to plaintiff's contract claims under section 17(1)(a), affirmed the district court's dismissal of plaintiff's tort claim on the ground that "no facts have been pleaded or shown elsewhere to support the claim or jurisdiction over it." *Id.* at 1196. In reaching this result, the court apparently did not consider the question of whether

jurisdiction of the tort claim could have attached by virtue of pendent jurisdiction. Thus, *Nerman* does not foreclose the result reached by this Court today.

8. 28 U.S.C. § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The initial requisite of transfer—that venue be proper both in the transferror and transferee courts—clearly has been satisfied. There is no dispute that venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a). Moreover, inasmuch as defendant is a Florida corporation licensed to do business in the Middle District of Florida, venue is appropriate in that court under 28 U.S.C. § 1391(c). Defendant, however, has failed to convince the Court that the other relevant considerations—convenience of the parties, convenience of the witnesses, and the interests of justice—weigh heavily in favor of transfer.

■ Since the defendant corporation is a resident of Florida, no doubt there is some inconvenience in its being forced to litigate the instant matter in this Court. Nonetheless, all that a transfer of this action to Florida would accomplish is shifting this inconvenience to the plaintiff, an Illinois corporation which would be compelled to litigate its claim in Florida. Where transfer merely would shift, rather than eliminate, inconvenience to the parties, plaintiff's original choice of forum should not be disturbed. *Blumenthal v. Management Assistance, Inc.*, 480 F.Supp. 470, 474 (N.D.Ill. 1979).

■ Similarly, the Court finds that convenience of the witnesses would not be furthered by transfer of this case to Florida. The defendant argues that many of the witnesses, including several experts that it will call at trial, reside in Florida. However, the convenience of experts is irrelevant in determining the propriety of transfer, *Blumenthal*, 480 F.Supp. at 474, since it may be presumed that witnesses who are paid to testify will appear at trial irrespective of the location of the forum. In addition, it appears that the witnesses plaintiff will call on the issue of damages all reside in Illinois. Although defendant suggests that the convenience of witnesses on the issue of liability should be preferred to that of witnesses on damages, it has cited no authority for such a proposition. Nor has defendant shown that compulsory process would be necessary to compel the testimony of the Florida witnesses whereas the Illinois witnesses would testify voluntarily. Thus, once again, transfer only would shift the burden of inconvenience rather than eliminate it.

■ Finally, the myriad of factors that comprise the consideration of "interest of justice" on balance do not suggest that transfer would be appropriate.[9] Transfer of this action would not diminish the cost of proof in this action; if anything, it might increase certain expenses. Were the case transferred to Florida, plaintiff no doubt would be required to transport a substantial amount of documentary evidence, particularly with respect to damages, to Florida. Moreover, plaintiff would be required to retain local counsel in Florida as well as bear the expense of transportation to and from Florida for its present counsel. *See Blumenthal*, 480 F.Supp. at 474. Nor has defendant intimated that a final judgment entered by this Court would not be fully enforceable in Florida or elsewhere.

■ Defendant relies heavily on the argument that transfer is indicated by the purported applicability of Florida law to the merits of this action. This consideration is most persuasive, however, in those cases in which the foreign law to be applied is complex or unsettled. *See Van Dusen v. Barrack*, 376 U.S. 612, 645, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964); *Credit Alliance Corp. v. Nationwide Mutual Insurance Co.*, 433 F.Supp. 688, 689 (S.D.N.Y.1977); *First Na-*

9. These factors include plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure the attendance of witnesses; the cost of making the necessary proof in the respective forums; enforceability of judgment; relative congestion of dockets in the respective courts; and questions concerning the applicable law in the case. *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967); *Hess*, 85 F.R.D. at 26–27 n.4. Since the Court already has addressed certain of these factors in the context of its consideration of the questions concerning convenience to parties and witnesses, the following discussion will address only those factors which have not yet been considered.

*tional Bank of Minneapolis v. White*, 420 F.Supp. 1331, 1337 (D.Minn.1976). Here, defendant has failed to prove to the Court's satisfaction that the Florida law to be applied in this case is either complex or ambiguous. The applicability of foreign law to this case, therefore, provides no basis for transfer of this action. Thus, for the foregoing reasons, the motion to transfer is denied.

To summarize, the Court finds that personal jurisdiction over defendant may be obtained under section 17(1)(b) with respect to the tort claim. Although the contract claims do not give rise to jurisdiction under section 17(1)(a), the Court finds that these contract claims, which arise out of the same transaction as the tort claims, properly are before the Court under principles of pendent jurisdiction. Thus, the motion to dismiss for lack of personal jurisdiction is denied. Defendant's motion for transfer of venue also is denied. Plaintiff, however, is directed to amend its complaint pursuant to footnotes 2 and 5, *supra*, within twenty days of the date of this memorandum opinion and order. Defendant is directed to answer the amended complaint within twenty days of its filing. It is so ordered.